**UNITED STATES of America, Plaintiff-Appellee.**

v.

**Kenneth CARTER, Defendant-Appellant.**

No. 86–5070.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 1, 1987.

Decided Sept. 4, 1987.

As Amended Oct. 29, 1987.

Stephen G. Wolfe, Los Angeles, Cal., for plaintiff-appellee.

Yolanda M. Barrera, Los Angeles, Cal., for defendant-appellant.

Before SCHROEDER, ALARCON and NELSON, Circuit Judges.

SCHROEDER, Circuit Judge:

Carter is a federal prisoner who appeals the district court's revocation of his probation. The district court found that Carter had violated the conditions of his probation by carrying a concealed weapon. Carter does not challenge this finding of the district court but argues that he had not begun to serve the sentence for which probation had been imposed. He contends he was still on parole from an earlier sentence for fraud and that the revocation was therefore improper.

The government argues that the probationary period had begun prior to the conduct which led to the revocation, or, in the alternative, that even if it had not begun the court could revoke probation on the basis of Carter's actions before he began to serve the sentence. We do not reach the second ground, for we agree with the government and the district court that the probation sentence began before Carter committed the acts upon which the district court based the revocation. The legal issue before us involves the order in which sentences should be served and arises in a novel factual context.

In August 1978, Carter received a seven-year sentence following convictions for wire fraud and interstate transportation of stolen securities. The full term of Carter's sentence was to expire on November 21, 1985. On October 24, 1980, Carter escaped from the federal institution at Lompoc, California, where he was serving his sentence. Following his surrender to the authorities, he pled guilty to an escape charge. On January 19, 1981, the court sentenced Carter to a three-year term of imprisonment, all but twenty days of which was suspended, for the crime of escape from the custody of the attorney general in violation of 18 U.S.C. § 751. The sentence also stated that Carter would remain on probation for a period of five years. The court ordered the escape sentence to run consecutively to the fraud sentence Carter was then serving.

Carter's confinement terminated in October 1982, when he was released on parole. The parole term was to expire in September 1985. In January 1986, the probation office, apparently believing that Carter was then serving the probation portion of his escape sentence, filed a petition requesting revocation of Carter's probation. The petition alleged, and the district court found, that the defendant had violated the terms of his probation in that he had failed to advise the probation office of his arrest and that he had failed to inform the probation officer of a change in his residence. The court entered judgment on February 24, 1986, revoking Carter's probation and ordering him incarcerated. It is from that judgment that Carter now appeals.

Carter contends that his sentence on the escape conviction should not have begun until after his discharge in September 1985 from parole on the 1978 fraud sentence. He maintains that the twenty-day incarceration followed by the five years of probation on the escape charge should not have commenced until September 1985. He points to the fact that the district court ordered the escape sentence to be served "consecutive and not concurrent to" the earlier sentence. Accordingly, he contends, the August 1985 violations occurred outside the probationary term of the escape sentence, and thus could not serve as the basis for the revocation of his probation. His position thus rests upon the proposition that the parole term separated the custody portions of the two sentences.

The record does not reflect whether or not Carter served the twenty-day confinement on the escape charge before being released in 1982, nor does it reflect when the probationary period was to begin in relation to the confinement. When Carter presented his argument to the district judge, the judge stated that he had "never done it" the way Carter suggested, but always intended consecutive custody sentences to run together, not to be broken up by an intervening parole term on the earlier sentence.

The Supreme Court has considered a similar situation and has held that a prisoner serving consecutive sentences on independent convictions is not entitled to be freed temporarily, during parole from the first sentence, prior to confinement on the second sentence. Rather, the prisoner must serve the confinement time of the subsequent sentence immediately after his confinement for the earlier sentence. *Hunter v. Martin*, 334 U.S. 302, 68 S.Ct. 1030, 92 L.Ed. 1401 (1948). *Hunter* arose in the context of dual state and federal convictions, but the reasoning of the Court as to the policies involved is equally applicable where, as here, both sentences are federal. "To hold otherwise," the Court said, "would mean that a man already finally adjudged guilty of a serious federal crime and sentenced to ten years imprisonment would be left at large and free of all restraint for an interlude between release from the state prison and commencement of the federal term." *Id.* at 303, 68 S.Ct. at 1030.

Somewhat analogously, in the extradition context, state courts have held that a prisoner released on parole on one sentence prior to its expiration is immediately "subject to extradition by a demanding state having an unsatisfied criminal sentence against him." *State ex rel. O'Connor v. Williams*, 95 Wis.2d 378, 290 N.W.2d 533, 535 (Wis.Ct.App.1980); *see also State ex rel. Otterstetter v. McManus*, 309 Minn. 68, 243 N.W.2d 730 (1976) (interpreting phrase "term of imprisonment" in state statute). These decisions reflect the same concern expressed in *Hunter* that parole should not provide an interlude of freedom between consecutive sentences of imprisonment.

There are at least two prudential reasons why a prisoner should not be released on parole prior to serving a second sentence. The first is the incentive to "jump" or not show up for the later sentence. The second is the undue harshness of releasing a prisoner to a temporary "freedom" that must inevitably end in reincarceration.

In *Hunter*, the sentencing judge stated his intention that the sentence should "be-

gin to run at the expiration of the sentence now being served in the Missouri State Penitentiary." *Id.* at 302–03, 68 S.Ct. at 1030. Here the district judge also clearly stated his intention that the sentences run consecutively. In the absence of a contrary statement at the time of sentencing, consecutive sentences should be presumed to entail back-to-back periods of incarceration.

Although it is clear from the order that the district court intended Carter to serve the two periods of incarceration consecutively, there is a remaining question as to when Carter's probation commenced. In this circuit, there is a strong presumption that a sentence of probation runs concurrently with a sentence of incarceration. *United States v. Adair*, 681 F.2d 1150, 1151–52 (9th Cir.1982). If the sentencing court does not intend probation to run concurrently with incarceration, "the probationary sentence should state explicitly and precisely when probation is to commence." *Id.* at 1151 n. 3; *see also United States v. Levitt*, 799 F.2d 505, 507 (9th Cir.1986). By way of example in *Adair*, we suggested that the sentencing order could specify that "the period of probation shall be consecutive to the sentence imposed on a remaining count or counts *including any parole or other supervision time.*" *Adair*, 681 F.2d at 1151 n. 3 (emphasis added).

Therefore, because the district court's sentencing order was silent as to when Carter's probation was to begin, we find that Carter's probation commenced when he began serving his custodial sentence on the escape charge and thereafer ran concurrently with his parole term on the other convictions. Accordingly, Carter was on probation at the time of his arrest on August 22, 1985.

AFFIRMED.